UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


STROUSE GREENBERG                                    CIVIL ACTION
PROPERTIES VI LIMITED
PARTNERSHIP ET AL.

VERSUS                                               NO: 06-1096

CW CAPITAL ASSET                                     SECTION: "S" (3)
MANAGEMENT LLC ET AL.


### ORDER AND REASONS

Upon consideration of the motion for a preliminary injunction of CWCapital Asset Management LLC, in its capacity as special servicer for LaSalle Bank National Association, as Trustee for the Registered Holders of Mortgage Capital Funding, Inc., Commercial/Multifamily Mortgage Pass-Through Certificates, Series 1997-MCI, and having determined that there is a substantial likelihood of success on the merits on the claim of breach of contract; the Trust will suffer irreparable harm if the insurance proceeds are dissipated; the harm to the Trust outweighs the harm to Strouse Greenberg Properties VI Limited Partnership, Oak Island II Limited Partnership, and Samuel M. Switzenbaum; and a preliminary injunction would not disserve the public interest,

**IT IS HEREBY ORDERED** that the motion for a preliminary injunction of CWCapital

Asset Management LLC, in its capacity as special servicer for LaSalle Bank National Association, as Trustee for the Registered Holders of Mortgage Capital Funding, Inc., Commercial/Multifamily Mortgage Pass-Through Certificates, Series 1997-MCI, against Strouse Greenberg Properties VI Limited Partnership, Oak Island II Limited Partnership, and Samuel M. Switzenbaum is **GRANTED**.  (Document #7.)

**IT IS FURTHER ORDERED** that the CWCapital submit a proposed preliminary injunction order, including an order requiring security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined, pursuant to Federal Rule of Civil Procedure 65(c).

## I. BACKGROUND

Strouse Greenberg Properties VI Limited Partnership (Strouse Greenberg) and Oak Island II Limited Partnership (Oak Island Partnership) filed a complaint for declaratory judgment against CWCapital Asset Management LLC (CW Capital), successor in interest to CRIIMI MAE Services Limited Partnership, and LaSalle Bank National Association (LaSalle Bank).  Strouse Greenberg is the owner of a 426-unit apartment complex located at 14001 Michoud Boulevard in New Orleans, Louisiana (Oak Island I).  Oak Island Partnership is the owner of the Oak Island II Apartments (Oak Island II).

CW Capital is the special servicer for LaSalle Bank, as trustee for the Registered Holders of Mortgage Capital Funding, Inc., Commercial/Multifamily Mortgage Pass-Through Certificates, Series 1997-MCI (the Trust).  The Trust is the owner and holder of two Multifamily Notes and Addendum to Multifamily Notes (the Strouse Note and the Oak Island Partnership

2

Note), dated November 13, 1996, in the principal amounts of $3,361,000 (the Oak Island I loan), and $3,840,000 (Oak Island II loan) made payable to The Patrician Financial Company. In addition to a mortgage on the property, the contracts assign to the Trust all proceeds of hazard and title insurance as additional collateral and provide the Trust with the exclusive option to hold all proceeds of the insurance policies. The mortgages each contain cross-collateralization and cross-default provisions such that security for one loan is security for the other and a default on one loan is a default on the other.

On August 29, 2005, Oak Island I and II were destroyed by Hurricane Katrina. Oak Island I was covered by a $5,000,000 FEMA Standard Flood Insurance Policy. Without the knowledge of the Trust, in November 2005, Strouse Greenberg received 40 checks totaling $5,000,000 in compensation for damage to Oak Island I. All but one of the policies listed the Trust, through Orix Real Estate Capital Markets, LLC (Orix)[1] as mortgagee/loss-payee. Thirty-eight of the checks ($4,750,000) were two-party checks payable to Strouse Greenberg and Orix, and two checks in the amount of $250,000 were payable to only Strouse Greenberg. Without the Trust's authorization, Strouse Greenberg negotiated 39 of the 40 checks: 38 two-party checks and one check payable only to Strouse Greenberg. One additional check is missing.

On February 1, 2006, Strouse Greenberg informed the Trust that it had received the checks. When Strouse Greenberg refused to turn over the proceeds to the Trust, the Trust declared both the Oak Island I and Oak Island II mortgage loans to be in default on February 6, 2006, and accelerated both loans on February 27, 2006. The outstanding balance for the two

---

[1] ORIX was the servicer on behalf of the Trustee, LaSalle National Bank.

loans is approximately $6.8 million.

Strouse Greenberg and Oak Island Partnership filed a complaint for declaratory judgment, seeking a declaration that the defendants 1) are not entitled to accelerate the loans, 2) are not entitled to the insurance proceeds, 3) are not entitled to a prepayment premium, and 4) are entitled to no more than payment of the balance of the Oak Island I loan less any monies held in escrow.  CWCapital filed an answer on its own behalf and on behalf of the Trustee and the Trust (collectively the Trust), a counterclaim against Strouse Greenberg and Oak Island Partnership, and a third-party complaint against Samuel M. Switzenbaum as guarantor.  The counterclaim and third-party complaint allege claims of breach of contract and civil conversion.  The court denied the Trust's motion for a temporary restraining order and held a hearing on the motion for a preliminary injunction.

## II. DISCUSSION

The Trust contends that it is entitled to a preliminary injunction against Strouse Greenberg to preclude the borrower from spending the insurance proceeds or exposing the proceeds to other creditors without the knowledge or consent of the Trust.

"A preliminary injunction is an extraordinary equitable remedy that may be granted only if the [movant] establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest."  Sunbeam Products, Inc. v. West Bend Co., 123 F.3d 246, 250 (5th Cir. 1997).  The four factors are mixed questions

of fact and law.

**A.  Likelihood of success on the merits**

The Trust contends that it is likely to succeed on its breach of contract and conversion claims.  The Trust argues that the loan documents constitute valid, binding contracts between the parties, and that the contract, which provides a perfected first priority security interest in the insurance proceeds, was breached when Strouse Greenberg negotiated the checks and failed to deliver the insurance proceeds to the Trust.

Strouse Greenberg challenges the interpretation of the language of the loan documents. Specifically, Strouse Greenberg argues that Uniform Covenant 5, Hazard Insurance, of the Multifamily Mortgage Assignments of Rents and Security Agreement does not require that the insurance proceeds from the FEMA policies be delivered to the Trust because Covenant 5 refers only to the Lexington Insurance Company[2] policy and does not include the FEMA flood insurance policy, which Strouse Greenberg voluntarily purchased in addition to the coverage required by the contract.  Strouse Greenberg further argues that, even if the loan documents authorize the Trust to hold the insurance proceeds, the Trust is required to apply the proceeds to the restoration of the damaged property because, as long as Strouse Greenberg continues to make payments on the notes and restoration of the damage is economically feasible, there is no "default" which would trigger the cross-collateralization and cross-default provisions of the contract.

---

[2]    The Lexington policy is a $100,000,000 Commercial Property Policy, which covers "all risk of direct physical loss or damage including flood and earthquake . . ., including equipment breakdown and terrorism."  Plaintiff's exh. 8, Preliminary injunction hearing.

A determination whether Strouse Greenberg breached the mortgage contract turns on two questions: 1) the preliminary question whether the Trust required Strouse Greenberg to purchase the FEMA flood policies and 2) whether Strouse Greenberg's conduct in depositing the proceeds of the FEMA policies and failing to turn them over to the Trust is a default under any of the covenants in the loan documents. Upon a finding that there is a default, the question arises whether the contract permits the Trust to apply the proceeds to the outstanding amount on the Oak Island I mortgage and to enforce the cross-collateralization and cross-default provisions to apply the proceeds to the Oak Island II mortgage.

### 1. Contractual requirement to purchase flood insurance

A contract is interpreted by determining the common intent of the parties. La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art 2046. A word that is susceptible to different meanings must be interpreted as "having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048.

Uniform Covenant 5 provides:

> 5. **HAZARD INSURANCE**. Borrower shall keep the improvements now existing or hereafter erected on the Property **insured by carriers** at all times satisfactory to Lender **against loss by fire, hazards included with the term "extended coverage," rent loss and such other hazards, casualties, liabilities and contingencies as Lender** (and if this instrument is on a leasehold, the ground lease) **shall require** and in such amounts and for such periods as Lender shall require. . . .
>
> All insurance policies and renewals thereof shall be in a form acceptable to Lender and **shall include a standard mortgage clause in favor of and in form acceptable to Lender**. Lender shall have the right to hold the policies, and

> Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. . . .
>
>     In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender.  Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, **to collect and receive insurance proceeds**, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder.  Borrower further authorizes Lender, at Lender's option, (a) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property or (b) **to apply the balance of such proceeds to the payment of the sums secured by this instrument, whether or not then due**, in order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this instrument is on a leasehold).
>
>     . . . . If the insurance proceeds are applied to the payment of the sums secured by this instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraph 1 and 2 hereof or change the amounts of such installments.

CWCapital exh. 1B at 3 (emphasis added).

    Uniform Covenant 5 requires Strouse Greenberg to keep Oak Island I insured against enumerated hazards and contingencies as Trust shall require and in such amounts and for such periods as the Trust shall require.  On February 20, 2004, the Trust , through its then servicer ORIX Capital Markets, LLC, informed Strouse Greenberg that Oak Island I is located within a federally designated Special Flood Hazard Area (SFHA) and that the mortgage loan guidelines "require that flood insurance be maintained for all outstanding loans secured by properties located within SFHAs."  CWCapital exh. 7A.  ORIX recommended that Strouse Greenberg contact its own insurance broker to obtain the most cost-effective coverage.  Id.  ORIX cautioned

7

Strouse Greenberg that "[f]ailure to obtain the required Flood Coverage may result in a default under your loan documents" or the option to "force-place single interest coverage" at Strouse Greenberg's expense might be exercised.  Id.

On April 14, 2004, ORIX sent Strouse Greenberg a "Second and Final Notice" that the property is located within a federally designated SFHA.  ORIX had not received evidence of the required flood coverage and recommended that Strouse Greenberg obtain coverage immediately.  CWCapital exh. 7B.  ORIX cautioned:

> Keep in mind that failure to obtain the required Flood Coverage may result in a default under your loan documents.  [ORIX] may also exercise the noteholder's option to force-place single interest coverage at your expense.  The premium and deductible on the force-place coverage may be considerably higher than conventional coverage obtained through your local insurance agent.

Id.

David Topoleski of Hugh Wood Insurance and Switzenbaum began "working to find a solution that will satisfy the loan guidelines and yet will not cause an undue hardship on the financial resources of the property."  CWCapital exh. 9B.  The problem at issue was that the flood portion of the Lexington policy had a $500,000 deductible per occurrence, which applied whether one building flooded or all 37 buildings in the complex flooded.  Id. (attached e-mail).  The federal underwriters on the loan required a deductible of $5,000 per building, which represents a total of $185,000 if all 37 buildings flooded.  Id.  According to Topoleski, a policy with a "per building deductible" would cost approximately $50,000 a year.  Id.  The managers were working diligently to explore other options because it "would be disastrous" if the bank purchased the insurance and "backbilled" the borrowers.  Id.

On June 17, 2004, Strouse Greenberg presented "Evidence of Property Insurance" with Travelers Insurance Company (the FEMA policies) for coverage for each of the 20 buildings at Oak Island I. CWCapital exh. 9D. Each building was covered for flood damage with a limit of $250,000 and a deductible limit of $2,000. Id. ORIX was named as the "Additional Interest" on behalf of the Trustee. Id. The FEMA policies were renewed for the period of July 15, 2005 through July 15, 2006, and were in force when Katrina destroyed the property. CWCapital exh. 10.

Accordingly, Strouse Greenberg's argument that the Trust required only the Lexington policy and that it purchased the FEMA policies voluntarily is not supported by the evidence. Under the clear language of Uniform Covenant 5, Strouse Greenberg was required to insure the property for any contingency that the Trust required. The correspondence between representatives of Strouse Greenberg and the Trust indicates that the Trust required FEMA flood insurance in addition to the original Lexington policy, and Strouse Greenberg acted to obtain it.

**2. Default**

The Trust argues that a breach of any covenant in the mortgages constitutes a default. Specifically, the Trust contends that a breach of the covenant to turn over the insurance proceeds is a default under the Oak Island I mortgage. Strouse Greenberg argues that there is no default because nothing in the loan documents prohibits Strouse Greenberg from receiving the insurance proceeds.

The inquiry focuses on the question of what constitutes a default under the contract. Section N of the "Rider to Multifamily Instrument" provides the circumstances of a default:

> [U]pon **Borrower's breach of any covenant** made in that Certificate of
> Borrower and such breach remains uncured for a period twenty(2) days after
> Lender gives notice of such breach to Borrower, then Borrower will be in default
> under the Note and the Instrument.  In that event, the entire unpaid principal
> balance of the Note, accrued interest, and any other sums due Lender under the
> Note then will become immediately due and payable, at Lender's option.

CWCapital exh. 1B, Rider at N (emphasis added).

The Trust contends that the default occurred because of a breach of Paragraph 3 of Uniform Covenant 5, which authorizes the Trust "to collect and receive insurance proceeds." Because Strouse Greenberg did not turn over the FEMA insurance proceeds to the Trust as required under the covenant, it is likely that the Trust will succeed on its claim that Strouse Greenberg breached Covenant 5 and is in default.

Strouse Greenberg contends that, even if the Trust has narrow authority to hold insurance proceeds, the Trust is prohibited from applying such proceeds to amounts due under the loan. Strouse Greenberg argues that the Trust is required to apply proceeds to the restoration of property damage unless Strouse Greenberg has failed to make payments on the notes or restoration of the damage is not economically feasible.

Covenant 5 authorizes the Trust, upon default, "to apply the balance of such proceeds to the payment of the sums secured by the instrument, whether or not then due."[3]  Thus, the Trust is likely to succeed on its claim that it is entitled to exercise its alternative option to apply the

---

[3]   Covenant 5 also gives the Trust the alternative option to hold the insurance proceeds and reimburse Strouse Greenberg for the cost of reconstruction of the property.  Strouse Greenberg represented to the court at oral argument that there is no plan to reconstruct the buildings on this site.

FEMA insurance proceeds to pay the balance of the loan.[4]

### 3. Cross-default

The Trust contends that the default on the Oak Island I mortgage triggers a cross-default[5] of the Oak Island II mortgage. The contract provides that an uncured default on one loan triggers a default on the other loan. Because the Trust is likely to succeed on its claim that a breach of Uniform Covenant 5 constitutes a default on the Oak Island I mortgage, it is likely that the Trust will succeed on its claim that, under the identical cross-default provisions, a default is triggered on the Oak Island II mortgage.

### 4. Cross-collateralization

Strouse Greenberg argues that the insurance proceeds from Oak Island I cannot be used to pay the indebtedness on the Oak Island II loan. The loans on Oak Island I and Oak Island II

---

[4] Because the court finds a likelihood of success on the merits on the breach of contract claim, the court does not address CWCapital's arguments regarding the conversion claim.

[5] Identical provisions in Section R of the "Rider to Multifamily Instrument" for the Oak Island I and Oak Island II loans provide:
R. Cross Default

If Borrower shall be in default under the Additional Loan and that default remains uncured after any applicable cure period, Borrower also then shall be in default under the Note and the Instrument. In that event, the entire unpaid principal balance of the Note, accrued interest and any other sums due Lender under the Note then will become immediately due and payable, at Lender's option. If Lender exercises this option to accelerate, Lender will do so in accordance with the provisions of the Note and the Instrument and may invoke any remedies permitted by applicable law or provided in the Note or the Instrument.

CWCapital exh. 1B and 2B.

were cross-collateralized.[6] Because the instrument securing the Oak Island I loan secures the indebtedness under the Oak Island II loan, the Trust is likely to succeed on its claim that it is entitled to apply the proceeds of the FEMA flood insurance policy to the loan balance on both the Oak Island I and the Oak Island II loans.

## B. Irreparable injury

CWCapital contends that the Trust will suffer irreparable harm if injunctive relief is not granted. CWCapital contends that a widely recognized exception to the rule against issuing an

---

[6] The loans on Oak Island I and Oak Island II are cross-collateralized. Section Q of the "Rider to Multifamily Instrument" (Oak Island I Apartments) provides:

Q. Cross collateralization

The Instrument shall also secure the loan (the "Additional Loan") evidenced by a Multifamily Note from Oak Island II Limited Partnership, a Louisiana limited partnership, to Lender dated November 13, 1996, secured by a Multifamily Mortgage, Assignment of Rents and Security Agreement, dated November 13, 1996 . . ., which encumbers a multifamily project commonly known as Oak Island II Apartments and located in New Orleans Louisiana (the "Additional Note"), and accordingly the indebtedness secured by the Instrument shall include all indebtedness evidenced by the Additional Note . . ., and the Instrument shall also secure the full and prompt payment and performance of all of the provisions, agreements, covenants and obligations contained in the Additional Note and in each other agreement, document or instrument now or hereafter . . . relating to the indebtedness evidenced by the Additional Note. . . . All sums evidenced by or incurred pursuant to the Additional Loan Documents . . . together with all provisions, agreements, covenants, and obligations under such Additional Loan Documents, constitute the Additional Loan and are secured by the Instrument. The Additional Loan Documents include a mortgage or deed of trust encumbering real and personal property described therein (the "Additional Property").

CWCapital exh. 1B, Rider at Q.

injunction to preserve money damages is when the property restrained is the subject of the lawsuit.

"A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." In re Fredeman Litigation, 843 F.2d 821, 825 (5th Cir. 1988) (quoting DeBeers Consolidated Mines v. United States, 65 S.Ct. 1130, 1134 (1987)). "[A]n injunction may issue to protect assets that are the subject of the dispute or to enjoin conduct that might be enjoined under a final order." Id. at 827. In each of the cases in which courts have restrained or enjoined the disbursement of funds, "the assets frozen were in some way the subject of the litigation." Id.

The insurance proceeds in this case are related to the dispute, and an injunction is appropriate to protect the assets that are the subject of the dispute.

### C.  Balance of harm to the Trust and to Strouse Greenberg

CWCapital contends that the harm to the Trust outweighs any harm to Strouse Greenberg because injunctive relief preserves the status quo and the insurance proceeds as security for the loans. CWCapital argues that the only remaining collateral for the loans is the insurance proceeds because Strouse Greenberg has stated that it is not going to rebuild on the property, and the undeveloped land is insufficient collateral for the loans.

Strouse Greenberg argues that it will be harmed because it will not have the $1.7 million needed to recreate updated plans, specifications, and a cost estimates in order to negotiate its claim to the proceeds of the Lexington policy, which provides full replacement costs to rebuild the complexes at another location.

The court finds that the harm to the Trust, viewed in the context of the contract between the parties, outweighs the harm to Strouse Greenberg.  As discussed above, the mortgage documents obligated Strouse Greenberg to acquire "any" insurance that the Trust required and gave the Trust the right to receive and apply the proceeds to the balance of the loans.  The apartment buildings were destroyed, and the value of the vacant land in the aftermath of Hurricane Katrina is undetermined at this point.

## D.  Public interest

CWCapital contends that the public interest is served by enjoining Strouse Greenberg from taking and controlling the insurance proceeds that it obtained by improper endorsement of joint-payee checks without the consent of the Trust.  Strouse Greenberg argues that it is in the public interest to use the insurance proceeds in the development of housing near the New Orleans area.

The court concludes that there is a greater public interest in granting injunctive relief  to assure that the funds remain available to enforce the mortgage contract.  That interest outweighs Strouse Greenberg's intended use of the funds for an unrelated rebuilding effort at another site outside the New Orleans area.

## III CONCLUSION

CWCapital has established the four elements necessary to warrant the issuance of a preliminary injunction.  The motion for a preliminary injunction is granted, and Strouse Greenberg is hereby enjoined from any transfer, use, expenditure or dissipation of the insurance proceeds without the written permission of the Trust.

New Orleans, Louisiana, this  15th  day of June, 2006.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**